Francis V. DANIELS, on behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

BLOUNT PARRISH & CO., INC., Defendant–Appellee.

No. 04–1839.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 14, 2004.*

Decided Oct. 14, 2004.

---

* Appellee Blount Parrish & Co., Inc., did not file a brief in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R.App. P. 34(a)(2).

Eric M. Chial, Lewitas & Associates, Chicago, IL, for Plaintiff–Appellant.

George R. Dougherty, Grippo & Elden, Chicago, IL, for Defendant–Appellee.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

## ORDER

Francis Daniels, in his capacity as the class representative of investors who purchased a bond issue, appeals the grant of summary judgment in favor of Blount Parrish & Co., Inc., the underwriter for the issue. Daniel claims that Blount violated § 12(2) and § 15 of the Securities Act of 1933, as codified in 15 U.S.C. §§ 77*l*(a)(2) and 77*o*, by selling the bonds to the class members through the use of a materially false or misleading offering memorandum. Because we agree with the district court that Daniels' evidence is insufficient to show that Blount was a "seller" of the bonds, a prerequisite for liability under either provision, we affirm.

This case stems from a series of bonds issued by the City of Wood River, Illinois, on behalf of Enviro–Tile of Wood River, Inc., which believed that it could use rela-

tively new technology to produce floor tiles composed principally of recycled waste glass available at little or no cost. The bond issue comprised two series: Type A bonds were to fund the construction of a manufacturing plant that would be leased to Enviro–Tile, while Type B bonds covered the cost of the bond issue. Blount was the underwriter for the bonds and assumed the risk of the entire issue by purchasing both series at below par value. The discounted price represented Blount's compensation for serving as the underwriter. Blount intended to recover its investment by transferring the bonds to a number of broker-dealers, who paid Blount a below-par price for the securities. But the project failed; approximately one year after Wood River issued the bonds, Enviro–Tile defaulted on the lease payments from which the bonds were payable.

Daniels, who had obtained $10,000 of Type A bonds from his broker, sued on behalf of a class of purchasers of both types of Wood River bonds. The class was certified with Daniels as class representative, and Daniels proceeded under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*, which makes any person offering or selling a security by means of a misleading prospectus liable to the purchasing party. A second count of the complaint alleged liability under § 15 of the Securities Act of 1933, 15 U.S.C. § 77*o*, which makes owners and controllers of entities liable under § 12 jointly and severally liable to the purchasers. Daniels alleged that Blount, which helped prepare the prospectus, knew or should have known that its forecasts and representations regarding the likely success of the enterprise were misleading.

Blount moved for summary judgment, arguing that for purposes of § 12 it was not a "seller" vis-a-vis the class members. Blount contended that the evidence instead established that it had sold all of the bonds to the broker-dealers, and that it was the broker-dealers who sold to the class members. The district court agreed. And since § 15 applies only to parties liable under § 12, the conclusion that Blount did not sell the issue to the class members disposed of both counts of the complaint. We review the summary judgment *de novo,* reading all disputed facts in favor of the non-movant. *See Harley–Davidson Motor Co. v. PowerSports, Inc.,* 319 F.3d 973, 980 (7th Cir.2003).

Daniels concedes that he did not deal directly with Blount, but strict privity between the purchaser of a security and a § 12 "seller" is not required. Rather, in *Schlifke v. Seafirst Corp.,* 866 F.2d 935, 940 (7th Cir.1989), we held in the context of a § 12(2) action that the broader bases for liability established by the Supreme Court for § 12(1) in *Pinter v. Dahl,* 486 U.S. 622, 682, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), applied equally to § 12(2). Under either § 12(1) or § 12(2), liability may attach to parties who pass title or directly solicit or offer to the plaintiff. *See Pinter,* 486 U.S. at 642, 108 S.Ct. 2063; *Schlifke,* 866 F.2d at 940. Daniels obtained his bonds from one of the broker-dealers, which it in turn received them from Blount. Daniels contends, however, that the circumstances of this chain of transactions establish "that Blount sold the bonds, not *to* the broker/dealers, but rather *through* the broker/dealers *to* the class members." This characterization is unsupported by the evidence at summary judgment.

■ In contending otherwise, Daniels first points to a number of "confirmation slips" memorializing the transfer of the bonds from Blount to the broker-dealers that dealt directly with bond purchasers. These slips are Blount's records of the transactions between the company and the

various broker-dealers. Daniels argues that for a number of reasons these slips constitute evidence that Blount sold the bonds to him, and that the dealers were merely intermediaries in the distribution. He represents that the slips show that Blount delivered the bonds not to the broker-dealers' own accounts, but rather to their "clearing houses." According to him, this path of delivery evidences that passage of the bonds to the broker-dealers was strictly an intermediate step in the actual sales transactions between Blount and the bond purchasers. Daniels asserts that there is no documentary evidence indicating that title passed from Blount to the brokers, and that this suggests that title in fact passed directly to him from Blount.

The problem for Daniels, however, is that his several conclusions do not follow from the confirmation slips he singles out as his sole supporting evidence. Daniels did not present any evidence to explain the information in the confirmation slips, or to back up counsel's characterizations of the meaning of the documents. Without such testimony, the slips alone do not bear out his theory. The confirmation slips do not say on their face that the bonds are being transferred to clearing houses, or that title is not being transferred. In fact, the slips on their face seem to contradict Daniels' characterization: the slips explicitly state that they are confirming "sales to" the respective broker-dealers, and note the price paid to Blount. Blount, in contrast, offered affidavits from two of its employees flatly stating that in exchange for the purchase price it transferred title to the bonds to the broker-dealers. Daniels made no effort to challenge these affidavits or present testimony from the broker-dealers to contradict Blount's characterization of the manner by which it passed the bonds to the broker-dealers. Daniels simply rested on his unsupported assertions about the significance of the confirmation slips, but no reasonable finder of fact could conclude, contrary to the available evidence, that the confirmation slips suggest in any way that Blount passed title to Daniels, sold directly to him, or solicited his purchase.

■ Still, says Daniels, if the confirmation slips cannot prove that Blount used the broker-dealers as middlemen in pass-through transactions to the bond purchasers, then a jury could still infer that conclusion from the rules governing securities dealers. Daniels contends that Blount's conduct must be interpreted according to a Rule 2740 of the National Association of Securities Dealers (NASD), which stipulates that an underwriter, in the course of a fixed price offering, "may not grant or receive selling concessions, discounts, or other allowances except as consideration for services rendered in distribution." Nat'l Ass'n of Sec. Dealers, Inc., Conduct Rules 2740(a), in N.A.S.D. Manual (CCH) p. 4537 (1997) (hereinafter NASD Rule 2740). According to Daniels, if Blount did sell to the broker-dealers as it insists was done, then Blount sold at a discount, which Rule 2740 allows only if the broker-dealers were assisting in the distribution of the Wood River bonds. Application of Rule 2740, says Daniels, lends support to his conclusion that Blount sold *through* the broker-dealers, rather than *to* them, because Blount surely was not flouting the governing rules when it passed the bonds to the broker-dealers. By this interpretation, Blount would be more like a § 12 "seller" because it was soliciting Daniels through its middlemen. At summary judgment Blount answered Daniels' contention by noting that Rule 2740 does not apply to transactions involving municipal securities, which is how Blount characterized the Wood River bonds. *See* Nat'l Ass'n of Sec. Dealers, Inc., Conduct Rules

120(h), in N.A.S.D. Manual (CCH) p. 2141 (1997) (excluding "municipal securities" from the definition of a "fixed price offering."). The district court concurred with Blount, reasoning that the bonds are municipal securities because Wood River is a city and a political subdivision of the State of Illinois, and because, according to the court, the offering memorandum "states that the bonds are obligations of Wood River."

We do not believe that the characterization of the bonds is so readily apparent. The district court concluded that the bonds are obligations of Wood River, and thus municipal securities.[1] In fact, though, the offering memorandum describes the bonds as "limited obligations" of the municipality, and states explicitly that the bonds do not constitute an indebtedness of Wood River. Blount's more substantial argument at summary judgment was that the bonds are municipal securities because they are tax exempt as industrial development bonds. *See* 15 U.S.C. § 78c(a)(29). But while the Type A bonds that Daniels purchased are probably tax exempt, Blount acknowledged in its statement of material facts that the Series B bonds are not tax exempt as required by the municipal securities exception. If this is so, then the district court's view that Rule 2740 is wholly irrelevant appears to be problematic.

Ultimately, though, we do not believe it necessary to decide conclusively how to characterize the bonds, or whether Rule 2470 governed the transfer of the bonds to the broker-dealers. Rule 2740, even if applicable, is not dispositive. The rule is chiefly intended to prevent underwriters from extending preferential prices to large investors. It prevents broker-dealers from granting discounts or concessions to any party other than other broker-dealers, and then only in exchange for services rendered. *See generally* Louis Loss and Joel Seligman, Securities Regulation § 10–F–2 (3d ed.1989). Its significance here is doubtful. At best Daniels insists that, if Rule 2740 applied, then Blount could have granted a discount to the broker-dealers (which it clearly did) only in exchange for "services rendered in distribution." NASD Rule 2740. What Daniels does not explain, however, is why Blount's compliance or noncompliance with Rule 2740 would have any impact on whether there existed a buyer-seller relationship between himself and Blount. The uncontradicted affidavits offered by Blount are conclusive that Blount sold the securities to the broker-dealers and in doing so passed title to them, at which point Blount's role in the sale and distribution of the Wood River bonds was done. There is no evidence that Daniels and Blount dealt with, or even were aware of, each other. We do not understand, moreover, why it would matter whether Blount breached Rule 2740 by negligence or design, in which case it would have directly sold the bonds at a discount to the intermediary broker-dealers and still not have been a "seller" to the class members under *Pinter*.

At most, Daniels' Rule 2740 theory creates an inference in favor of his characterization of Blount's actions. He may very well have an argument that Blount failed to act in compliance with the rule if, because of the Series B bonds, the issue as a whole was not an obligation of the municipality. This argument does not do enough to show that Daniels could demonstrate at trial that Blount passed title to, solicited,

---

**1.** Municipal securities are defined as securities "which are direct obligations of, or obligations guaranteed as to principal or interest by, a State or any political subdivision thereof ... or any security which is an industrial development bond (as defined in section 103(c)(2) of the Internal Revenue Code of 1954)." 15 U.S.C. § 78c(a)(29).

or offered the bonds to Daniels. *See Pinter,* 486 U.S. at 642, 108 S.Ct. 2063.

Liability under 15 U.S.C. §§ 77*l*(a)(2) and 77(*o*), as interpreted in *Pinter* and *Schlifke,* require something less than strict privity but something more than the parties' presence in the same chain of title. And the latter is all that Daniels established here. He presented no evidence that would allow a reasonable finder of fact to conclude that Blount passed title to him or solicited his purchase of the Wood River bonds. Accordingly, the district court's grant of summary judgment is AFFIRMED.

